# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

| | | |
|---|---|---|
| In re EBIX, INC. DERIVATIVE LITIGATION | ) ) ) ) ) | File No. 1:13-CV-62 -RWS |

_____

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

**Page(s)**

I.    PRELIMINARY STATEMENT ...................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS .....................................3

    A.    Background ......................................................................................3

    B.    The Settlement................................................................................5

III.  THE PROPOSED SETTLEMENT SHOULD BE APPROVED AS
    FAIR, ADEQUATE, AND REASONABLE ..................................................8

    A.    The Standard for Final Settlement Approval .......................................8

        1.    The Significant Obstacles to Success at Trial Support Approval
            of the Settlement .....................................................................11

        2.    The Range of Reasonableness .................................................13

        3.    The Complexity, Expense, and Likely Duration of Continued
            Litigation Support Approval of the Settlement........................16

        4.    The Reaction of Ebix Shareholders to Date Supports Approval
            of the Settlement .....................................................................17

        5.    The Stage of the Proceedings Supports Approval of the
            Settlement................................................................................18

    B.    The Settlement is the Result of Good Faith, Arm's-Length
        Negotiations Between Experienced and Capable Counsel ................19

IV.   THE AGREEMENT FOR PAYMENT OF FEES AND EXPENSES
    SHOULD BE APPROVED..........................................................................21

    A.    The Award of Attorneys' Fees is Supported by the Application
        of the *Johnson* Factors..........................................................................22

        1.    The Time and Labor Required and the Novelty and Difficulty
            of the Questions Involved .......................................................23

        2.    The Amount Involved and the Results Obtained.....................24

           3.     The Skill, Experience, and Reputation of Counsel...................25

           4.     The Contingent Nature of the Fee.............................................25

V.    CONCLUSION.................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Amtel Corp. Deriv. Litig.*,
   No. C 06-4592-JF, 2010 WL 9525643 (N.D. Cal. March 31, 2010) ................15

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993) ...............................................................14

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) ..................................................*passim*

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989)........................................................................23

*Boeing Co v. Van Gemert*,
   444 U.S. 472 (1980).......................................................................22

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) .........................................................8

*In re Caterpillar Inc. Deriv. Litig.*,
   Civil Action No. 12-1076-LPS-CJB, 2014 WL 2587479 (D. Del. June 10,
   2014) ......................................................................................12

*In re Catfish Antitrust Litig.*,
   939 F. Supp. 493 (N.D. Miss. 1996)...................................................23

*In re Cendant Corp. Deriv. Action Litig.*,
   232 F. Supp 2d 327 (D.N.J. 2002).....................................................18

*In re Chicken Antitrust Litig.*,
   560 F. Supp. 957 (N.D. Ga. 1980).................................................10, 12

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................14

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ......................................................14, 19

i

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ........................................................8, 10, 19, 20

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ...............................................................12, 20

*Fla. Trailer & Equip. Co. v. Deal*,
    284 F.2d 567 (5th Cir. 1960) .............................................................................14

*Francisco v. Numismatic Guar. Corp. of Am.*,
    No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla., Jan. 31, 2008) .....................19

*Garst v. Franklin Life Ins. Co.*,
    No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25,
    1999) ..................................................................................................................14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................................19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...........................................................................................22

*In re Infinity Broad. Corp. S'holders Litig.*,
    802 A.2d 285 (Del. 2002) ..................................................................................23

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ..................................................................10, 22

*Johnson v. Georgia Highway Express Inc.*,
    488 F.2d 714 (5th Cir. 1974) .................................................................22, 23, 25

*Maher v. Zapata Corp.*,
    714 F. 2d 436 (5th Cir. 1983) .....................................................................*passim*

*Miller v. Republic Nat'l Life Ins. Co.*,
    559 F.2d 426 (5th Cir. 1977) ...............................................................................9

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970)................................................................................22, 24, 25

*Milstein v. Werner*,
    58 F.R.D. 544 (S.D.N.Y. 1973) ........................................................................25

*In re Motorsports Merch. Antitrust Litig.*,
   112 F. Supp. 2d 1329 (N.D. Ga. 2000)............................................................9, 18

*In re MRV Commc'n Inc. Deriv. Litig.*,
   No. CV 08-038000 GAF, 2013 WL 2897874 (C.D. Cal. June 6, 2013)
   Dkt. 284.......................................................................................................15

*In re Oclaro, Inc. Deriv. Litig.*,
   No. C-11-3176 EMC, 2014 WL 4684993 (N.D. Cal. Sept. 19, 2014)..............15

*Pettway v. Am .Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ........................................................................20

*Polk v. Good*,
   507 A.2d 531 (Del. 1986) ......................................................................9, 12, 16

*Ressler v. Jaconson*,
   822 F. Supp. 1551 (M.D. Fla. 1992)..................................................................17

*Ryan v. Gifford*,
   Civil Action No. 2213-CC, 2009 WL 18143 (Del. Ch. Jan. 2, 2009).................9

*Shlensky v. Dorsey*,
   574 F.2d 131 (3d Cir 1978) .............................................................................11

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001).............................................................25

*Unite Nat'l Ret. Fund v. Watts*,
   No. Civ. A. 04CV3603DMC, 2005 WL 2877899 (D.N.J. Oct. 28, 2005).........15

**OTHER AUTHORITIES**

7 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 22.110,
   at 476 (4th ed. 2002) .........................................................................................8

iii

Lead Plaintiff, Hotel Trades Council and Hotel Association of New York City, Inc. ("Hotel Trades" or "Plaintiff"), pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, respectfully submits this memorandum of law in support of Plaintiff's Motion for Final Approval of the Proposed Derivative Settlement[1] (the "Settlement") and for an Award of Attorneys' Fees and Expenses.[2]

## I.     PRELIMINARY STATEMENT

Currently before this Court is the proposed Settlement of this derivative action involving Ebix, Inc. ("Ebix" or the "Company"), a Delaware corporation. The Settlement provides for various corporate governance reforms and structural improvements designed to strengthen Ebix's oversight of tax and regulatory matters, board independence, and compliance with accounting standards.   Each governance reform is specifically designed to address, remedy, and prevent the recurrence of the breaches of fiduciary duties and related misconduct alleged in the

---

[1] The terms of the Proposed Settlement are set forth in the Stipulation of Settlement ("Stipulation") dated September 23, 2014, previously submitted to the Court in connection with preliminary approval of the Settlement on September 25, 2014.

[2] The accompanying Declaration of Richard A. Speirs in Support of Plaintiff's Motion for Final Approval of Settlement and Approval of Attorneys' Fees and Expenses (the "Speirs Declaration") is an integral part of this submission.   For the sake of brevity, Lead Plaintiff respectfully refers the Court to it for a detailed description of: the history of the Action; the nature of the claims asserted in the Action; the negotiations leading to the Settlement; and the value of the Settlement to the Class, and for a description of the services Lead Counsel provided for the benefit of the Class.

1

Consolidated Shareholder Derivative and Class Action Complaint ("Complaint").

Dkt. No. 20; *see also* Speirs Decl. at ¶¶ 44-65; Declaration of Daniel Morrissey at

¶¶ 28-33 ("Morrissey Decl.").[3]   Specifically, Ebix has agreed to adopt and

implement the following measures as part of the Settlement:

- Designate an independent director as "Lead Independent Director" (with specified responsibilities) separate from and in addition to the board chairman if the board chairman is not an independent director

- Increase the number of directors on the Corporate Governance Committee to three (3) independent directors who will review the Company's corporate governance principles annually;

- Retain an independent auditor in India that is approved by the Public Company Accounting Oversight Board ("PCAOB") or affiliated with a member firm;

- Create a "Director of Internal Audit" and separately a "Director of Internal Tax" positions both of whom shall report directly to the Audit Committee; and

- Appoint a Trading and Compliance Officer to evaluate and monitor the Company's insider trading policies and practices.

Stip. at ¶¶ 2-2.1.6.

Implementation of these reforms will confer significant benefits upon Ebix

and its shareholders.   Because the filing and prosecution of this Action were

---

[3] The accompanying Morrissey Declaration is also an integral part of this submission.   A g a i n ,  f o r  the sake of brevity, Plaintiff respectfully refers the Court to it for a detailed description of the substantial benefits conferred upon Ebix and its shareholders as a result of the corporate governance reforms and structural improvements required by the Settlement.

substantial and material causes in the Company's decision to implement these beneficial corporate changes, Plaintiff respectfully requests that the Court approve the Settlement under Rule 23.1. Stip. at ¶ 2.1

Finally, in connection with the Settlement, Plaintiff requests that the Court approve fees and expenses of $690,000 that, as provided for in the Stipulation, Ebix has agreed to pay upon completion of all the terms of the Settlement. Stip. at ¶ 4.1

## II.    NATURE AND STAGE OF THE PROCEEDINGS

### A.    Background

The first of these consolidated shareholder derivative actions was commenced on January 7, 2013 on behalf of nominal defendant Ebix, a publicly traded software company that provides products and services to the insurance industry.[4] A second derivative action was filed on January 23, 2013. Following consolidation of the two actions, and appointment of Hotel Trades as Lead Plaintiff, Hotel Trades filed a Consolidated Amended Complaint on May 20, 2013. Dkt. 20.

---

[4] At the time this case was filed, a state derivative action *In re Ebix Inc. Shareholder Derivative Action*, No. 2011-CV-205276 was already pending in Georgia Superior Court (the "State Court Action"). Approval of the Settlement will also finally resolve the State Court Action.

The Complaint alleged that Defendants[5] breached their fiduciary duties to the Company and its shareholders by, *inter alia*, (i) disregarding the Company's internal control problems; (ii) engaging in a tax avoidance scheme; (iii) overstating the Company's expected growth; (iv) wasting corporate assets by repurchasing stock at inflated prices; and (v) improperly exercising stock options while in possession of non-public information.[6]

As further detailed in the Speirs Declaration, the Complaint alleged that the Company's high auditor turnover and the retention of smaller, less sophisticated auditors left the Company's internal controls in shambles, subjecting the Company to massive potential exposure.  For example, at the time the Complaint was filed, the Company was the Defendant in a lawsuit brought by former shareholders of Peak Performance Solution, Inc. ("Peak"), a company acquired by Ebix in September 2009, as well as a Defendant in a lawsuit brought by Microsoft Corp. ("Microsoft").  Both lawsuits related directly to the Company's failing internal

---

[5] The Individual Defendants (or "Defendants") are Ebix's Chief Financial Officer ("CFO") Robert Kerris, and the members of its Board of Directors, Robin Raina (who also serves as the Company's Chief Executive Officer "CEO"), Neil Eckert, Rolf Herter, Hans Ueli Keller, Pavan Bhalla and Hanz Benz.

[6] The Complaint also included allegations regarding a proposed going-private transaction between Ebix and Goldman Sachs & Co ("Goldman Sachs") that was announced on May 1, 2013.  On June 19, 2013 Ebix and Goldman Sachs mutually agreed to terminate the transaction, therefore the allegations concerning the transaction are no longer pertinent to this Action.

controls, with the Peak lawsuit containing allegations that "Ebix does not have sufficient internal accounting controls to allow their books and records to be relied on." The Company was also subject to a formal investigation by the Securities and Exchange Commission (the "SEC") as a result of its inadequate internal controls, and received at least two subpoenas in connection with that investigation.

The Complaint further alleged that Defendants engaged in a sophisticated tax avoidance scheme designed to keep deferred tax liability off Ebix's books, thereby allowing the Company to overstate its revenues. Defendants also misrepresented the Company's organic growth rate, and caused the Company to waste millions of dollars by repurchasing over 1.9 million shares of Ebix stock at a time when the price of the stock was artificially inflated by the Company's false public statements. Finally the Complaint contained allegations that Defendants Herter, Bhalla, Keller, Benz, and Eckert improperly exercised stock options while in possession of adverse material non-public information regarding the SEC's investigation into Ebix.

## B.    The Settlement

In late 2013, the Parties entered into a series of lengthy and arduous settlement discussions. The extensive arm's-length negotiations were complex and occurred over numerous months.    Speirs Decl. at ¶¶ 37-39.   The discussions

involved various proposals and counter-proposals regarding potential terms of the Settlement, consultations with a corporate governance expert, the review of certain documents, and the drafting of mutually-agreeable settlement papers. *Id.* The negotiations also involved proposals from the derivative plaintiff in the State Court Action and sought to simultaneously resolve all derivative claims in both the Federal and State Court Actions. Speirs Decl. at ¶ 39.

Ultimately, the Parties agreed to settle the Actions for significant corporate governance reforms and improvements. Stip. at ¶¶ 2-2.1.6. Implementation of the reforms will increase director independence and increase Ebix's oversight over regulatory and taxation matters. Speirs Decl. at ¶ 44. For example, the designation of a Lead Independent Director and the expansion of the Corporate Governance Committee to include three independent directors will increase board autonomy and will give independent directors an increased role in the Company's overall corporate governance. Speirs Decl. at ¶¶ 47-53; Morrissey Decl. at ¶¶ 28(a)-(f); 29(a)-(c). Retention of an independent foreign auditor approved by the PCAOB will prevent the recurrence of the alleged misconduct arising out of the Company's business with its foreign subsidiaries in India, and will also increase the Audit Committee's independent oversight of regulatory and taxation matters. Speirs Decl. at ¶¶ 54-55; Morrissey Decl. at ¶¶ 30(a)-(f). Appointment of a Director of

6

Internal Audit and a Director of Internal Tax, each of whom will report directly to the Audit Committee, will strengthen the Company's internal controls while further increasing its oversight of regulatory and tax matters.  Speirs Decl. at ¶¶ 56-63; Morrissey Decl. at ¶¶ 31(a)-(d).  Finally, the creation of a Trading Compliance Officer will improve Ebix's current insider trading practices and policies, and will prevent the recurrence of the type of alleged insider trading in the Consolidated Complaint.  Speirs Decl. at ¶¶ 63-65; Morrissey Decl. at ¶¶ 32(a)-(e).

On September 26, 2014, the Court preliminarily approved the Settlement. On October 14, 2014, Notice was provided to shareholders by posting the Notice and Stipulation of Settlement on the websites of Cohen Milstein Sellers & Toll PLLC and Federman and Sherwood.  On that same date, Ebix filed an 8-K with the SEC, published the Notice in Investor's Business Daily, and the posted the Notice to the "Investor Relations" section of its website.  Speirs Decl. at ¶ 41; Declaration of Todd F. Chatham, Dkt. No. 28.  On October 28, 2014 counsel for Defendants informed Plaintiff that the Board had approved the Settlement.  Stip. at ¶ 6.1(a). To date, there has been no objection to the Settlement.

The Settlement also provides, subject to Court approval, for the payment of attorneys' fees and expenses to Plaintiffs' counsel in an aggregate amount not to exceed $690,000.00 which was negotiated between the Parties and will be paid by

Ebix. *Id.* at ¶ 4.1. The Settlement is conditioned on, among other things, entry of the Final Order and Judgment in this Action approving the Settlement and subsequent dismissal of the parallel State Court Action. *Id.* at ¶ 6.1.

## III. THE PROPOSED SETTLEMENT SHOULD BE APPROVED AS FAIR, ADEQUATE, AND REASONABLE

### A. The Standard for Final Settlement Approval

Federal Rule of Civil Procedure 23.1 provides that a derivative action may be "settled . . . only with the court's approval." The standard for determining whether final approval is warranted is whether the proposed settlement is fair, adequate, and reasonable and is not the product of collusion between the parties.[7] *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).[8] In determining the fairness and adequacy of a proposed settlement, courts should consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; and (4) the complexity, expense and duration of litigation; (5) the substance and amount of

---

[7] "The role of the court and the criteria to be considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a class action." 7 Alba Conte & Herbert B. Newberg, <u>Newberg on Class Actions</u> § 22.110, at 476 (4th ed. 2002).

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1211 n.8 (11th Cir. 1981) the Eleventh Circuit adopted as precedent all decisions of Unit B of the former Fifth Circuit.

opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *see also Ryan v. Gifford*, Civil Action No. 2213-CC, 2009 WL 18143, at *5 (Del. Ch. Jan. 2, 2009) ("In reviewing the settlement of a derivative suit, the Court must determine . . . whether the settlement terms are fair, reasonable, and adequate.").[9]

Courts should also be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986. Federal courts have long expressed a preference for settlements because they are a "means of amicably resolving doubts and preventing lawsuits," *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977), and because they conserve "judicial resources by avoiding the expense of a complicated and protracted litigation process," *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). "Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.*, 714 F. 2d 436, 455 (5th Cir. 1983) (citation omitted).

---

[9] The *Bennett* factors are substantially similar to the factors used by Delaware Courts when determining the fairness and adequacy of a proposed derivative settlement. *See Polk v. Good*, 507 A.2d 531, 536 (Del. 1986) (listing factors).

Determining the fairness of a settlement is left to the sound discretion of the trial court, and will not be overturned absent a clear showing of abuse of that discretion.   *Maher*, 714 F.2d at 455.  Additionally, a trial court is "'entitled to rely on upon the judgment of experienced counsel for the parties' in evaluating settlement."  *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 689 (N.D. Ga. 2001) (citation omitted).  Indeed, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Cotton*, 559 F.2d at 1330.  In reviewing the settlement, "the [C]ourt should weigh the relative advantages and disadvantages of the agreement and analyze the relevant facts and law with an eye towards the terms of the settlement, but without reaching ultimate conclusions on the issues underlying the dispute or substituting its business judgment for that of the parties."  *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 960 (N.D. Ga. 1980).  The Court should not make the proponent of a proposed settlement "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."  *Cotton*, 559 F.2d at 1330 (citation omitted) (internal quotation marks omitted).

In the context of derivative settlements, the "principal factor to be considered in determining the fairness of a settlement … is the extent of the benefit

to be derived from the proposed settlement by the corporation." *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir 1978).  As the Court in *Maher* explained "the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action."  714 F.2d at 461.

Here, when examined under the foregoing criteria, it is evident that the proposed Settlement is an excellent result for Ebix and its shareholders and that it is fair, adequate, and reasonable.  The Settlement was a product of extensive arm's-length negotiations between counsel for both parties and it achieved significant corporate governance reforms designed to ensure the misconduct alleged in the Complaint does not reoccur.  Once implemented, the reforms will provide substantial benefits to the Company and its shareholders.  Given the significant additional effort, delays, and uncertainty that would arise if the Parties were to proceed to a trial on the merits, as well as the inevitable post-trial motions and appeals that would follow, Plaintiff submits that the proposed Settlement is in the best interests of the Parties and should be approved by the Court.

### 1.    The Significant Obstacles to Success at Trial Support Approval of the Settlement

In assessing the fairness, reasonableness, and adequacy of the Settlement, the Court should consider the likelihood of Plaintiff's success on the merits at trial,

and should balance the risk of continuing litigation against the immediate and certain outcome provided for by settlement. *See, e.g.*, *In re Chicken*, 560 F. Supp. at 960. However, the Court "has neither the duty nor the right to reach any ultimate conclusions on the issues of fact or law which underlie the merits of the dispute." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993); *Polk v. Good*, 507 A.2d 531, 536 (Del. 1986) ("In examining a settlement, the Chancellor need not try the case. Indeed, he is not required to decide any of the issues on the merits.").

Here, although Plaintiff believes its claims were and are meritorious, it also recognizes that it would have had to overcome significant obstacles to achieve a recovery for the Company and its shareholders if the litigation continued, with the distinct possibility that, any judgment—even if Plaintiff prevailed—might well have provided for less of a recovery than that achieved under the Settlement. Among the obstacles facing Plaintiff was the threshold requirement to plead demand futility. This is no easy task, as establishing demand futility can be an onerous burden. *See In re Caterpillar Inc. Derv. Litig.*, Civil Action No. 12-1076-LPS-CJB, 2014 WL 2587479, at *6 (D. Del. June 10, 2014) ("Alleging that demand is excused is a 'difficult feat[.]'") (citation omitted).

12

Further, Defendants have denied and continue to deny all allegations of wrongdoing contained in the Complaint, as well as any liability. Instead, Defendants continue to maintain that they acted in good faith and in a manner they reasonably believed to be in the best interests of Ebix and its shareholders. Defendants would vigorously pursue this position at trial, and application of the business judgment rule to Defendants' actions under Delaware law would present a formidable obstacle to proving liability, making the likelihood of success uncertain. Even if Plaintiff were to prevail on liability, damages would be uncertain, as Defendants denied and continue to deny that Plaintiff, Ebix, or its shareholders have suffered or were harmed by the conduct alleged in the Complaint.

Thus, given the difficulties and uncertainty present in every remaining stage of the litigation – from meeting the requisite pleading requirements, to a liability determination, to the calculation of damages – the certain recovery achieved by the Settlement is an excellent result and weighs heavily in favor of the Settlement's approval.

### 2.      The Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the Court to determine the 'possible range of recovery' and then ascertain

where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 25, 1999) (citation omitted).  Determination of a "reasonable" settlement, however, does not mean "establishing success or failure to a certainty." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981); *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

In the context of a derivative settlement, the "range of possibly recovery" differs from that of a class action.  As the court in *Maher* explained:

> where, as here, the derivative suit is largely an attack on past corporate management practices, as well as on . . . present officers and directors, the dollar amount of a possible judgment, which is essentially the sole goal in the class action damage suit, is not the sole, and may well not be the most important, matter to be considered, for the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action. ... The evaluation of such an economic impact is necessarily judgmental and imprecise and normally does not lend itself to meaningful quantification."

714 F.2d at 461; *see also Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("Despite the difficulties they pose to measurement, nonpecuniary benefits to the corporation may support a settlement."); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) ("Courts have recognized that corporate governance

14

reforms such as those achieved here provide valuable benefits to public companies.").

Here the Settlement is well within the range of reasonableness, particularly when compared to the risks of continued litigation.  The Settlement requires the adoption and implementation of numerous corporate governance reforms that will provide significant benefits to Ebix and its shareholders, strengthen the Company's internal controls, and prevent the recurrence of the misconduct alleged in the Complaint.  Speirs Decl. at ¶¶ 44-65; Morrissey Decl. at ¶¶ 28-33.  Settlements achieving such results, including the very corporate governance reforms at issue here, have regularly been approved.  *See, e.g.*, *In re Oclaro, Inc. Deriv. Litig.*, No. C-11-3176 EMC, 2014 WL 4684993, at *2 (N.D. Cal. Sept. 19, 2014) (approving settlement requiring appointment of lead independent director); *In re MRV Commc'n Inc. Deriv. Litig.*, No. CV 08-038000 GAF, 2013 WL 2897874 (C.D. Cal. June 6, 2013) Dkt. 284 (settlement requiring appointment of lead independent director and internal audit officer approved); *In re Amtel Corp. Deriv. Litig.*, No. C 06-4592-JF, 2010 WL 9525643 (N.D. Cal. March 31, 2010) Dkt. No. 254 (approval of settlement requiring appointment of lead independent director); *Unite Nat'l Ret. Fund v. Watts*, No. Civ. A. 04CV3603DMC, 2005 WL 2877899 (D.N.J.

Oct. 28, 2005) Dkt. 23-1 (settlement requiring Company to appoint internal auditor and senior officer to oversee insider trading policies approved).

The Settlement is also reasonable in light of the substantial difficulties that Plaintiff would face if this litigation were to continue. The Settlement provides Ebix with the certain recovery of significant corporate governance reforms and eliminates the risks associated with continued litigation, including the risk of no recovery for Ebix or its shareholders. The Settlement here is an excellent result for the Company and its shareholders and should be approved.

> **3. The Complexity, Expense, and Likely Duration of Continued Litigation Support Approval of the Settlement**

The Court should also consider the complexity, expense, and likely duration of continued litigation when determining whether a settlement is fair, adequate, and reasonable. *Bennett*, 737 F.2d at 986; *Polk*, 507 A.2d at 536. Here, this Action is necessarily complex, as it involves complicated issues associated with derivative actions generally, as well as difficult factual allegations related to the implementation of an international tax avoidance scheme, corporate waste, and other misrepresentations about the financial health of the Company. A jury would have to be educated on these subjects by numerous expert witnesses. Further, continued litigation could be extremely protracted and would require the

expenditure of significant additional resources for both Parties including, but not limited to, time spent researching and briefing numerous issues throughout the course of the litigation, document discovery, deposition preparation and the taking of depositions, trial preparation and trial, coordination with expert witnesses, and potential appeals.  If this action proceeded to trial, the trial would last at least several weeks, and given the complexity of the issues, would require the introduction of hundreds of exhibits.  The outcome of trial would be uncertain, and Plaintiff would run the risk of achieving no recovery for Ebix or its shareholders. Finally, any final trial judgment would be subject to post-trial motions and possible appeals, potentially requiring several more years of litigation.

Thus, if the Action were tried to conclusion rather than settled, there is a real risk of Plaintiff obtaining a lesser recovery, or even no recovery at all.  Given the inherent complexity of derivative actions, and the excellent recovery achieved by Settlement, the Settlement warrants approval.  *Maher*, 714 F. 2d at 455 (noting the difficulty and unpredictability of derivative actions).

### 4.    The Reaction of Ebix Shareholders to Date Supports Approval of the Settlement

The reaction of shareholders to a proposed settlement is a significant factor to be considered and absence of substantial objections is "excellent evidence of the settlement's fairness and adequacy."  *Ressler v. Jaconson*, 822 F. Supp. 1551, 1556

(M.D. Fla. 1992); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("[T]he lack of objections is a further factor weighing in favor of approval of the settlement[].")*; In re Cendant Corp. Deriv. Action Litig.*, 232 F. Supp 2d 327, 333 (D.N.J. 2002) ("Given that no formal objection was filed to the settlement itself, there is little doubt that this factor weighs in favor of approval.").

Here, the Court approved the form and manner of Notice in its Order Preliminarily Approving the Settlement.  Notice was provided to shareholders on October 14, 2014 in the manner required by the Order.  Speirs Decl. at ¶41.  The Notice informed shareholders of their rights under the Settlement and their right to object.  The deadline for submitting objections is November 18, 2014.  To date, no objection to the Settlement has been received.  *Id.* at ¶ 43.

### 5.    The Stage of the Proceedings Supports Approval of the Settlement

In evaluating a proposed settlement, a Court should also consider the "stage of proceedings at which the settlement was achieved."  *Bennett*, 737 F.2d at 986.  Here, settlement was reached only after Lead Plaintiff filed a detailed Complaint based on its comprehensive investigation of the allegations alleged therein, after an initial production of documents to plaintiff in the State Court Action, and after the Parties engaged in lengthy settlement negotiations.  Settlement at this stage in the

18

litigation will foreclose the substantial expense and expenditure of resources associated with continued litigation, discovery, and trial preparation, as well as the burden imposed on the Court by complex and protracted litigation.

In weighing this factor, the Court should focus on whether "[c]ounsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery has advanced. *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla., Jan. 31, 2008).  Indeed, "formal discovery [is not] a necessary ticket to the bargaining table."  *In re Corrugated Container*, 643 F.2d at 211; *see also Cotton*, 559 F.2d at 1332 (the fact that "very little formal discovery was conducted" is not a bar to settlement).  Here, both Parties are represented by competent counsel who have thoroughly reviewed the strengths and weakness of their respective positions, have reviewed certain documents produced by Defendants, and therefore had "sufficient information" to find that settlement of this Action was preferable to the cost and expense that would be required by additional litigation. *Francisco*, 2008 WL 649124 at *11.

### B. The Settlement is the Result of Good Faith, Arm's-Length Negotiations Between Experienced and Capable Counsel

A settlement is presumptively fair, where, as here, the Parties, through capable counsel, have engaged in arm's-length negotiations.  *In re GMC Pick-Up*

*Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).   The judgment of experienced counsel for the parties is particularly informative to the trial court's review of the proposed settlement.   *Cotton*, 559 F.2d at 1330; *In re Domestic Air*, 148 F.R.D.   at 313.   If experienced counsel determines that a settlement is in the best interests of the parties, "the attorney's views must be accorded great weight."   *Pettway v. Am .Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

Here, counsel for both parties are highly experienced in complex litigation and shareholder derivative action and are well informed about the strengths and weaknesses of this action.   Plaintiff is represented by Cohen Milstein and the Law Offices of David A. Bain.   Both firms are recognized for their preeminence in shareholder and complex litigation.   Defendants' counsel, Alston & Bird is likewise experienced in handling shareholder and complex litigation.   Thus, the agreement of experienced counsel for both parties that the Settlement is fair and reasonable strongly supports approval of the Settlement.   Furthermore,   Plaintiff's counsel carefully evaluated the facts of this case and the legal principles applicable to this action and determined that there was a serious question as to whether a more favorable result could be achieved through further litigation, including trial.   In reaching this conclusion, Plaintiff's counsel (1) reviewed Ebix's press releases,

public statements, SEC filings, and securities analysts' reports and advisories about the Company; (2) reviewed media reports regarding the Company; (3) researched the applicable law with respect to the claims alleged in the actions and the potential defenses thereto; (4) and reviewed and analyzed relevant documents produced by the Defendants.  As a result of this investigation and research, Plaintiff's counsel believes that the corporate governance reforms achieved by the proposed Settlement confer substantial benefits upon Ebix and its shareholders.  Given the difficulties in this Action, and the uncertainty inherent in litigation, this outcome is an excellent recovery.  Accordingly, the Settlement should be approved by the Court.

## IV.   THE AGREEMENT FOR PAYMENT OF FEES AND EXPENSES SHOULD BE APPROVED

As discussed above, the Settlement is an excellent recovery for Ebix as it confers substantial benefits upon the Company in the form of significant corporate governance improvements.   Additionally, the Parties negotiated a fee of $690,000.00 for attorneys' fees and expenses, including a modest $1,500 incentive award to Lead Plaintiff, only after an agreement was reached regarding the terms of the Settlement.  The agreed-upon award is fair and reasonable given the time, effort, and resources expended by Plaintiff's counsel, and is not contingent on approval of the Settlement.   Stip. at ¶¶ 4.1; 4.3.

It is well-recognized that counsel who obtain substantial benefits for a corporation as a result of their prosecution and successful resolution of derivative claims are entitled to attorneys' fees and costs. *Boeing Co v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-94 (1970). Negotiated, agreed-upon attorneys' fees are the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). Additionally, when the agreed upon fee is a result of protracted arm's-length negotiations the court should give "substantial weight to a negotiated fee amount." *Ingram*, 200 F.R.D. at 695. "This weight is particularly appropriate when, as here, no objection has been raised to the fee award and the amount of fees is entirely consistent with a reasonable fee award under the circumstances of the case." *Id.*

### A.   The Award of Attorneys' Fees is Supported by the Application of the *Johnson* Factors

In determining whether a requested award of attorneys' fees is fair and reasonable, district courts should be guided by the factors articulated in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) *abrogated*

22

*on other grounds Blanchard v. Bergeron*, 489 U.S. 87 (1989).[10] The *Johnson* factors are not rigid and formulaic, but should be applied in light of the circumstances of a particular case to ensure just compensation for counsel.[11]  *See In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 502 (N.D. Miss. 1996) ("[N]ot every [*Johnson*] factor need be necessarily considered.").   As demonstrated below, application of the pertinent factors supports the fairness and reasonableness of the requested fee.

### 1.    The Time and Labor Required and the Novelty and Difficulty of the Questions Involved

Shareholder derivative actions are "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 455.  This Action is no exception.  The legal and factual issues presented were difficult and complex.  The alleged misconduct in the Complaint resulted from multiple years of inadequate internal controls, and breaches of

---

[10] The *Johnson* factors are substantially similar to those employed by Delaware Courts.  *See In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 293 (Del. 2002) (listing factors).

[11] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

fiduciary duties arising from complicated taxation and accounting schemes. Many of the allegations were technical and nuanced and required substantial and detailed knowledge of corporate law.

Additionally, Plaintiff's counsel undertook significant efforts and expended substantial resources throughout the course of the litigation and settlement including, *inter alia*, undertaking a thorough investigation of the facts alleged, successfully briefing a motion for appointment of Lead Plaintiff and Lead Counsel, filing a complaint and a consolidated amended complaint, and participating in protracted settlement negotiations.

Plaintiff's counsel has expended 1,496.72 hours in the prosecution and settlement of this action and incurred $856,259.00 in attorneys' fees and $21,266.34 in unreimbursed expenses for a total of $877,525.34. The agreed-upon fee award is modest in light of these numbers, as it is *less* than the total fees and expenses incurred in prosecution of this action, and is fair and reasonable.

### 2.     The Amount Involved and the Results Obtained

The substantial benefit conferred upon Ebix and its shareholders is perhaps the most important factor for the Court to consider in its approval of the fee award. As the Supreme Court explained in *Mills*: "[A]n increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a

derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature."  396 U.S. at 395, 396-97.

As discussed herein, the corporate governance improvements achieved as a result of the Settlement confer a substantial benefit on Ebix and its shareholders, and Defendants acknowledge that the filing of this Action was a "substantial and material cause in the Company's decision to implement the corporate governance measures."  Stip. at ¶ 2.1.  Thus, because Lead Counsel's efforts obtained a substantial benefit for the Company, the request for approval of attorneys' fees and expenses should be approved.

### 3.    The Skill, Experience, and Reputation of Counsel

The experience, reputation, and ability of counsel is another factor the Court should consider when determining whether a fee award is fair and reasonable. *Johnson*, 488 F.2d at 717-719.  Lead Counsel has attached its firm's resumé as Exhibit F to the Speirs Declaration.   The resumé reflects Lead Counsel's exemplary record of achievement in shareholder litigation.

### 4.    The Contingent Nature of the Fee

Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees.  *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001); *Milstein v.*

*Werner*, 58 F.R.D. 544, 549 (S.D.N.Y. 1973) ("Derivative suits . . . require the initiative of shareholders to commence the suit, and the probable level of compensation for attorneys as a practical matter directly affects the ability of shareholders to exercise such initiative.  Thus, fee allowances in this area should be viewed as an incentive, as much as a just reward for services performed.")

Here, Plaintiff's counsel undertook litigation of this Action, which presented difficult factual and legal issues, with no guarantee of a successful resolution or compensation for their efforts.  Despite the risks of litigation Plaintiff's counsel expended significant time and resources working on behalf of Lead Plaintiff, Ebix, and its shareholders by  thoroughly investigating the action, successfully briefing a motion for appointment of Lead Plaintiff and Lead Counsel, filing a consolidated amended complaint, reviewing various documents, and effectively negotiating a favorable settlement.  Given the risks involved in the litigation, the fully contingent nature of this action further supports the agreed upon fees and expenses.

## V.    CONCLUSION

For the reasons set forth above, Lead Plaintiff respectfully submits that the Settlement, including the agreed upon attorneys' fees and expenses, is fair, reasonable, and adequate and should be approved by the Court.

DATED:  November 4, 2014          LAW OFFICES OF DAVID A. BAIN, LLC
                                  */s/ David A. Bain*
                                  DAVID A. BAIN
                                  Georgia Bar No. 032449
                                  1050 Promenade II
                                  1230 Peachtree Street, NE
                                  Atlanta, Georgia 30309
                                  Telephone: (404) 724-9990
                                  Facsimile: (404) 724-9986
                                  dbain@bain-law.com

                                  *Liaison Counsel for Derivative Plaintiff*

                                  COHEN MILSTEIN SELLERS
                                    & TOLL PLLC
                                  CHRISTOPHER LOMETTI
                                  RICHARD A. SPEIRS
                                  88 Pine Street
                                  14th Floor
                                  New York, NY 10005
                                  Telephone:  (212) 838-7797

COHEN MILSTEIN SELLERS
  & TOLL PLLC
DANIEL S. SOMMERS
ELIZABETH ANISKEVICH
1100 New York Avenue
Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

*Counsel for Derivative Plaintiff*

SCHUBERT JONCKHEER & KOLBE
LLP
Three Embarcadero Ctr Ste 1650
San Francisco, CA  94111-4018
Tel: (415) 788-4220
Fax: (415) 788-0161

## **Local Rule 7.1D Certification**

Counsel for Plaintiff hereby certifies that the text of this memorandum has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.

*/s/ David A. Bain*
David A. Bain
Georgia Bar No. 032449
LAW OFFICES OF DAVID A. BAIN, LLC
1050 Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309
(404) 724-9990
(404) 724-9986 (facsimile)
dbain@bain-law.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2014, I electronically filed the foregoing PLAINTIFF'S MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM OF LAW IN SUPPORT with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to all attorneys of record.

*/s/ David A. Bain*
Georgia Bar No. 032449
LAW OFFICES OF DAVID A. BAIN, LLC
1050 Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309
Tel: (404) 724-9990
Fax: (404) 724-9986
dbain@bain-law.com

*Liaison Counsel for Plaintiffs*